IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PAUL L FABER, | ) | Civil No.  04-CV 645-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| BOMBARDIER, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Mark McCulloch
Walter Weiss, Jr.
Powers, McCulloch & Bennett, LLP
3000 Wells Fargo Center
1300 S.W. Fifth Avenue
Portland, OR 97201
  Attorneys for Plaintiff

Jonathan M. Hoffman
Aaron C. Denton
Martin, Bischoff, Templeton, Langslet & Hoffman, LLP
888 S.W. Fifth Avenue, Suite 900
Portland, OR 97204
  Attorneys for Defendants Bombardier

>Jeanne F. Loftis
>Nicole R. Commissiong
>Bullivant Houser Bailey P.C.
>888 S.W. Fifth Avenue, Suite 300
>Portland, OR 97204-2089
>>Attorneys for Defendants Dow Chemical Canada, Inc., Union Carbide
>>Canada, Inc., and Wedco Moulded Products

JELDERKS, Magistrate Judge:

Plaintiff Paul L. Faber brings this action alleging products liability, negligence and recklessness against defendants Bombardier, Inc., Bombardier Motor Corporation of America, Inc. (now known as BRP US Inc.),[1] Bombardier Recreational Products, Inc. (collectively, "the Bombardier defendants"); Union Carbide Canada, Inc.; Wedco Moulded Products, an unincorporated division of Union Carbide Canada, Inc.; and Dow Chemical Canada, Inc. The Bombardier defendants bring a cross-claim for indemnity or contribution against Union Carbide Canada, Inc. and Wedco Moulded Products.

Defendant Dow Chemical Canada, Inc. (DCCI), on its behalf and on behalf of defendants Union Carbide Canada, Inc. (UCCI) and Wedco Moulded Products, moves to dismiss plaintiff's claim, for lack of personal jurisdiction.

Defendant DCCI, on behalf of defendants UCCI and Wedco Moulded Products, also moves to dismiss defendant Bombardier's cross-claim for lack of personal jurisdiction or, in the alternative, for *forum non conveniens*.

---

[1] Defendant Bombardier Motor Corporation of America, Inc. notes that it is incorrectly captioned as "Bombardier Motor Corporation, Inc."

2 - FINDINGS AND RECOMMENDATION

I recommend granting the motions to dismiss plaintiff's claims and defendant Bombardier's cross-claim for lack of jurisdiction. I recommend denying the motion to dismiss Bombardier's cross-claim for *forum non conveniens* as moot.

**BACKGROUND**[2]

Plaintiff Paul Faber is an Oregon resident. Plaintiff alleges that on November 11, 2002, he was injured by an explosion that occurred while he was working on a "Sea-Doo" personal watercraft manufactured by the Bombardier defendants. Plaintiff alleges that the Sea-Doo's fuel tank was defective and the explosion was caused by the ignition of accumulated gas fumes from a leak in the fuel tank neck.

Defendants Bombardier, Inc., and Bombardier Recreational Products, Inc. are Canadian corporations with principal places of business in Montreal, Canada, and Valcourt, Canada, respectively. Defendant Bombardier Motor Corporation of America, Inc., now known as BRP US, Inc., states in its answer that it is a Delaware corporation with its principal place of business in Wausau, Wisconsin.[3] Bombardier Motor Corporation of America, Inc., is a wholly-owned subsidiary of Bombardier, Inc. and serves as the holding company of all subsidiaries of Bombardier, Inc. in the United States.

Bombardier, Inc. states that it at one time, designed, developed and assembled a watercraft known as "Sea-Doo," that Bombardier Recreational Products, Inc. currently

---

[2] The following facts are accepted as true only for the purpose of analyzing the pending motions.

[3] Bombardier Motor Corporation of America, Inc.'s corporate disclosure statement indicates that it is an Idaho corporation with its principal place of business in New York City, New York.

3 - FINDINGS AND RECOMMENDATION

designs, develops and assembles Sea-Doo watercraft, and that Bombardier Motor Corporation of America, Inc. was in the business of selling Sea-Doo watercraft to dealers who sold those watercraft in Oregon. Bombardier, Inc. acknowledges that in or about 1995, it manufactured, and a Bombardier entity sold, the Sea-Doo that allegedly injured plaintiff.

Defendant Union Carbide Canada, Inc. (UCCI) was a wholly owned subsidiary of the Union Carbide Canada Corporation (UCC) until UCC was acquired by The Dow Chemical Company, Inc. in February 2001. As a result of this acquisition, UCC became a wholly-owned subsidiary of The Dow Chemical Company, Inc. In October 2001, UCCI was combined with Dow Chemical Canada, Inc. and the resulting entity is known as Dow Chemical Canada, Inc. (DCCI).

Before 1998, UCCI owned an unincorporated division known as Wedco Moulded Products (Wedco). Wedco specialized in injection molding and manufactured fuel tanks and fuel tank filler necks for personal watercraft. UCCI sold its Wedco division in 1998. Plaintiff alleges that Wedco manufactured and supplied to the Bombardier Companies a fuel tank which caused the explosion described in plaintiff's complaint.

Defendant DCCI asserts that defendant Bombardier[4] provided Wedco with all of the designs and specifications for the fuel tanks and fuel tank filler necks, and that the purchase order agreements for these components were negotiated in Canada. DCCI also states that the relevant fuel tanks and fuel tank filler necks were manufactured by Wedco in Canada, sold to Bombardier in Canada and delivered to Bombardier in Canada at its Quebec, Canada plant.

---

[4]Both Plaintiff and defendant Dow Chemical Canada, Inc. refer to the three defendant Bombardier Corporations collectively as "Bombardier."

4 - FINDINGS AND RECOMMENDATION

DCCI asserts that neither it nor UCCI nor Wedco has ever manufactured any products in Oregon, employed any workers in Oregon or owned or maintained any facilities in Oregon. DCCI also asserts that neither UCCI nor Wedco has ever sold or advertised for sale any personal watercraft tanks or fuel tank filler necks in Oregon.

Plaintiff contends that when DCCI, UCCI and Wedco entered into their contract with Bombardier they were aware that their fuel tanks would be installed in Sea-Doo watercraft sold throughout the United States. Plaintiff also contends that, pursuant to this contract, Union Carbide was required to provide fuel tanks that complied with United States Coast Guard standards.

For simplification purposes, defendants DCCI, UCCI and Wedco will hereinafter be referred to collectively as "Union Carbide." Defendants/cross-claimants Bombardier, Inc., Bombardier Recreational Products, Inc. and Bombardier Motor Corporation of America, Inc. will hereinafter be referred to collectively as "Bombardier."

## CLAIMS

Plaintiff brings six claims. Plaintiff's first, third and fifth claims against Bombardier allege strict products liability, negligence and recklessness, respectively.

Plaintiff's second, fourth and sixth claims against Union Carbide allege strict products liability, negligence and recklessness, respectively.

Bombardier asserts a number of affirmative defenses and brings a cross-claim against Union Carbide Canada, Inc. and Wedco Moulded Products for indemnity or contribution.

5 - FINDINGS AND RECOMMENDATION

# STANDARDS FOR EVALUATING MOTIONS TO DISMISS
# FOR LACK OF JURISDICTION

A plaintiff bears the burden of establishing jurisdiction. Forsythe v. Overmyer, 576 F.2d 779, 781 (9th Cir.), cert. denied, 439 U.S. 864 (1978). Where, as here, the court considers a motion to dismiss for lack of jurisdiction without conducting an evidentiary hearing, the plaintiff is required only to make a *prima facie* showing of jurisdictional facts in order to withstand the motion. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). This means that plaintiff must only demonstrate facts that, if true, would support jurisdiction. Id. In determining whether it may exert jurisdiction over a nonconsenting out-of-state defendant, a federal court must consider whether the forum state's long-arm statute permits the assertion of jurisdiction and whether the assertion of jurisdiction violates the defendant's federal constitutional due process rights. See Fireman's Fund Ins. Co. v. National Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996). Under Or. R. Civ. P. 4 L, Oregon courts may assert jurisdiction to the limits allowed by the Oregon and United States Constitutions. The question here is therefore whether the assertion of jurisdiction over defendants comports with federal due process requirements. See Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985).

The due process clause of the United States Constitution protects persons from being subject to the binding judgments of a forum with which they have established no meaningful contacts, ties, or relations. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (citing International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). Jurisdiction is proper only where a defendant's conduct and connection with the forum state are such that

the defendant should reasonably anticipate being brought into court in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

## DISCUSSION

I. Union Carbide's motions to dismiss plaintiff's claims and defendant Bombardier's cross-claim for lack of jurisdiction

Personal jurisdiction may be either "general" or "specific." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). General jurisdiction exists when a nonresident defendant's contacts with the forum state are substantial or continuous and systematic. Id. The factors courts consider in determining the existence of general jurisdiction include: whether the defendant makes sales, solicits or engages in business in the forum state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Specific personal jurisdiction, which may exist in the absence of such substantial contacts, requires analysis of the nature and quality of a defendant's contacts with the forum state in relation to the cause of action asserted. See id.

The parties agree that if Union Carbide is not subject to personal jurisdiction on plaintiff's original claim, then this court also lacks jurisdiction over Union Carbide with respect to Bombardier's cross-claim.

Plaintiff and Bombardier do not appear to dispute Union Carbide's argument that it is not subject to general jurisdiction in Oregon. I also conclude that Union Carbide's contacts with Oregon were not sufficiently continuous, substantial or systematic to support the

assertion of general jurisdiction. The issue is therefore whether this court has "specific" jurisdiction.

The court may exercise "specific" jurisdiction over a non-consenting nonresident defendant only when certain "minimum contacts" exist between the defendant and the forum state. World-Wide Volkswagen, 444 U.S. at 291. The Ninth Circuit has concluded that the minimum contacts requirement is met when: 1) the defendant performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum; 2) the claim arises out of or results from the defendant's forum-related activities; and 3) the exercise of jurisdiction is reasonable. Ballard, 65 F.3d at 1498.

The first prong of specific jurisdiction analysis examines whether the defendant has "purposefully availed" itself of the privilege of conducting activities in the forum. Id. Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir.1986).

In products liability cases involving a non-resident product manufacturer or distributor, a "stream of commerce" analysis is used to determine whether the purposeful availment prong of specific jurisdiction is satisfied. See generally, World-Wide Volkswagen, 444 U.S. 286. Under the standards set out in World-Wide Volkswagen, a state's exercise of personal jurisdiction over a non-resident manufacturer may comport with the requirements of due process if the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." Id. at 298. The World-Wide Volkswagen Court concluded that it is not unreasonable to subject a manufacturer to suit in the forum state "if the sale of a product . . . arises from the efforts of

8 - FINDINGS AND RECOMMENDATION

the manufacturer or distributor to serve directly or indirectly, the market for its product in other states." Id. at 297.  However, "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" Id. at 298, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958).

In Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102 (1987), the Supreme Court attempted to clarify the conduct and contacts needed to establish jurisdiction based upon the presence of a defendant's products in the forum. However, the Justices were unable to produce a majority opinion as to the level of contact necessary to support jurisdiction, and instead issued three separate opinions analyzing how "purposeful availment" could be demonstrated in the "stream of commerce" context.  See generally, id.

     A four justice plurality led by Justice Brennan concluded that courts may assert jurisdiction over any manufacturer or retailer which places its product in the stream of commerce and is *aware* that its product may be sold in the forum state. Id. at 116-17.  Justice O'Connor, joined by Chief Justice Rehnquist and Justices Powell and Scalia, interpreted World-Wide Volkswagen as requiring an additional showing of some affirmative act by the defendant purposefully directed at the forum state. Id. at 112.  Justice Stevens agreed that the exercise of jurisdiction over the defendants in Asahi would offend notions of fair play and substantial justice, but specifically disagreed with both Justice O'Connor's and Justice Brennan's analysis of the minimum contacts issue.  Id. at 121-22.

     Asahi has left the law of personal jurisdiction in product liability suits unsettled and circuit courts have subsequently used varied approaches in applying stream of commerce analysis.  Compare, e.g., Barone v. Rich Brothers Interstate Display Fireworks Company,

9 - FINDINGS AND RECOMMENDATION

25 F.3d 610, 613-15 (8th Cir. 1994) (adopting a position consistent with that of Justice Brennan) and Ruston Gas Turbines, Inc. v. Donaldson Company, 9 F.3d 415, 420 (5th Cir. 1993) (same) with Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 683 (1st Cir. 1992) (adopting a position consistent with that of Justice O'Connor).  A number of circuits have not explicitly selected either standard but instead have decided cases based on the particular facts presented. See, e.g., Tobin v. Astra Pharmaceutical Products, Inc., 993 F.2d 528, 543 (6th Cir. 1993); Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548 (11th Cir. 1993); Pennzoil Products Co. v. Colelli & Ass'n., 149 F.3d 197 (3rd Cir. 1998).

Plaintiff cites Hedrick v. Daiko Shoji Co., Ltd., 715 F.2d 1355, 1358 (9th Cir. 1983) for the proposition that, in this circuit, a manufacturer or supplier of a defective product who knew or should have known that its product would enter the stream of commerce can be subjected to jurisdiction in the forum where an injury allegedly caused by that product occurred.  However, Hedrick is of limited relevance because it is a pre-Asahi decision, and subsequent decisions of the Ninth Circuit and of this District have questioned its continued validity and have placed greater importance on a defendant's affirmative conduct in connection with the forum state.  Although the Ninth Circuit has not specifically adopted the position taken by either Justice O'Connor or Justice Brennan in Asahi, case law indicates that this circuit will not find the purposeful availment requirement satisfied unless a defendant has taken an affirmative step beyond merely placing its product in the stream of commerce with an awareness that it may be sold in the forum state.  See generally, Doe v. American Nat'l Red Cross, 112 F.3d 1048 (9th Cir. 1997); Omeluk v. Langsten Slip and Batbyggeri A/S, 52 F. 3d 267 (9th Cir. 1995); Espinoza v. Bitz, 2004 WL 2165358 (D. Or. 2004); Sunset Fuel v. Zanjani, 1997 WL 118440 (D. Or. 1997).

10 - FINDINGS AND RECOMMENDATION

This emphasis on "affirmative conduct" is consistent with World-Wide Volkswagen, 444 U.S. 286 and Burger King, 471 U.S. 462, significant pre-Asahi decisions that were not invalidated by Asahi. The Burger King Court emphasized that a defendant could "not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. . . ." but instead could only be subjected to a court's jurisdiction as a result of "actions by the defendant *himself* that create a 'substantial connection' with the forum state." Burger King, 471 U.S. at 475 (citations and internal quotations omitted).

Similarly, in its analysis of when placing a product in the "stream of commerce" could give rise to jurisdiction, World-Wide Volkswagen instructs that the foreseeability that is critical to due process analysis is that "the defendant's *conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297 (emphasis added). The Court added that defendants must be allowed "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Id.

To briefly summarize, a thorough review of the relevant pre- and post-Asahi decisions from this and other circuits confirms that there is considerable uncertainty as to precisely what conduct on the part of a non-resident defendant manufacturer will support jurisdiction. However, I am satisfied that, at least in this circuit, jurisdiction requires more than merely placing a product in the "stream of commerce" with an awareness that it may be sold in the forum state. I conclude that a court may properly assert jurisdiction only if the defendant targets the market in the forum state through some greater affirmative conduct.

The present state of "stream of commerce" jurisprudence does not allow a court to determine with absolute confidence when an out-of-state component manufacturer may be

11 - FINDINGS AND RECOMMENDATION

subject to jurisdiction in a particular forum. However, I am confident that, in the present action, Union Carbide's contacts with Oregon are insufficient to demonstrate the "purposeful availment" necessary to support jurisdiction. Plaintiff does not dispute Union Carbide's assertion that UCCI and Wedco have not manufactured any products, hired any employees, conducted any business operations, or maintained any offices or other facilities in Oregon. Plaintiff also does not dispute Union Carbide's assertion that UCCI and Wedco have never sold or advertised for sale any products, including any personal watercraft tanks or fuel tank filler necks, in Oregon. The record also contains no indication that Union Carbide established channels for providing regular advice to customers in Oregon. The fuel tank and fuel tank filler neck at issue here were manufactured by Union Carbide's subsidiary, Wedco, in Canada and were sold and delivered to Bombardier in Canada.

    Plaintiff asserts that Bombardier told Union Carbide representatives that personal watercraft containing Union Carbide's fuel tanks would be sold across the United States. Plaintiff also asserts that, pursuant to the contract between Union Carbide and Bombardier, Union Carbide was required to produce a fuel tank that met United States Coast Guard standards. Accepting these assertions as true establishes, at most, that Union Carbide was aware that the components it was manufacturing may be incorporated into a Bombardier product that may be sold in one or a number of states in the United States. This awareness is not enough to satisfy the purposeful availment prong of the minimum contacts test. Plaintiff has failed to demonstrate that Union Carbide's activities satisfy the "purposeful availment" prong of the test for specific jurisdiction, and, therefore, has not shown that Union Carbide has sufficient minimum contacts with Oregon to support jurisdiction in this forum.

My conclusion that Union Carbide did not purposefully avail itself of the privilege of conducting activities in Oregon makes it unnecessary to analyze whether the other requirements for asserting jurisdiction are satisfied.

II. Union Carbide's alternative motion to dismiss defendant Bombardier's cross-claim on grounds of *forum non conveniens*

In light of my conclusion that this court lacks personal jurisdiction over Union Carbide, I recommend that Union Carbide's motion to dismiss Bombardier's cross-claim for *forum non conveniens* be denied as moot.

## CONCLUSION

The Union Carbide defendants' motions to dismiss plaintiff's claims (#35) and defendant Bombardier's cross-claim against it (#26-1) for lack of jurisdiction should be GRANTED. The Union Carbide defendants' alternative motion to dismiss defendant Bombardier's cross-claim for *forum non conveniens* (#26-2) should be DENIED as moot.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due August 16, 2005. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 29th day of July, 2005.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

13 - FINDINGS AND RECOMMENDATION